[No. 36198. Department One. November 21, 1962.]

*In the Matter of the Estate of* Jack C. Shea, *Deceased.*
Patrick H. Shea, *Appellant,* v. John Patrick Shea,
*Respondent.*\*

*Patrick H. Shea,* pro se.

*Gavin, Robinson & Kendrick,* for respondent.

Rosellini, J.—Jack Shea died on September 14, 1956, leaving a widow, Dorothy Shea, and a son by a prior mar-

\*Reported in 376 P. (2d) 147.

riage, the respondent. A few days before his death, he executed a deed and bill of sale, making all of his property community property, and a will which provided that his wife should receive her community half of the property, and in addition should receive the income from a motel, which was the major item in the estate, so long as she managed it.

The will also provided that the motel was to be sold as soon as a profitable sale could be made. Specific bequests, to be paid out of the proceeds of the sale, were made for the education of the testator's nephews and nieces; and his son was made the residuary legatee of the testator's community interest. His wife was named executrix.

After Jack Shea's death, Dorothy Shea managed the motel for about two years and acted as executrix. In the meantime she remarried and became desirous of disassociating herself from the motel operation. She obtained her discharge as executrix; the appellant became executor, and the management of the motel was turned over to him. Dorothy Shea will be referred to hereafter as Mrs. Holmes.

After many attempts to negotiate a price at which the appellant could purchase her interest in the estate, an agreement was reached, whereby he would pay her $15,000 for her community interest and any claims which she might have against the estate. A few days later, on August 21, 1959, the appellant completed negotiations for the sale of the motel to third parties for $100,000. Mrs. Holmes was aware of this sale and ratified it by her subsequent acts.

On August 11, 1960, the appellant submitted his executor's report to the court for approval. In it he claimed the widow's community interest and reimbursement for payments which she had made while managing the motel. The record does not disclose whether these payments were made out of income from the operation of the motel or from separate property of Mrs. Holmes, but in view of the disposition which we will make of this case, the question is not material.

The trial court, after hearing arguments and evidence, concluded that the appellant was not entitled to retain any

benefits which he received when he bought the community interest of Mrs. Holmes, but allowed him to recover reimbursement for the payments which she had made on debts. It was the opinion of the trial court that the appellant violated his fiduciary duty to the respondent, as residuary legatee, when he purchased the community interest of the widow and sold it for a profit, and that the profit should inure to the benefit of the estate.

In reaching this conclusion, the trial court accepted the authorities cited by counsel for the respondent, which speak in strong terms of the fiduciary duty owed by an executor to the estate and its beneficiaries. The correctness of these authorities is beyond question, but they are all concerned with purchases by the executor of property of the estate. The rule in such cases is very strict. Because of the temptation that inevitably must arise to take advantage of the beneficiaries, an executor or other fiduciary is forbidden to sell the property of the estate to himself without the consent of the beneficiaries, and if such a sale takes place, it is voidable at the instance of the beneficiaries. As stated in 3 Pomeroy's Equity Jurisprudence (5th ed. 1941) 805, § 958 (quoted with approval by this court in the leading case of *Ryan v. Plath*, 18 Wn. (2d) 839, 140 P. (2d) 968),

" . . . The rule is inflexibly established that where, in the management and performance of the trust, trust property of any description, real or personal property, or mercantile assets is sold, the trustee cannot, without the knowledge and consent of the *cestui que trust*, directly or indirectly become the purchaser. Such a purchase is always voidable, and will be set aside on behalf of the beneficiary, unless he has affirmed it, being *sui juris*, after obtaining full knowledge of all the facts. It is entirely immaterial to the existence and operation of this rule that the sale is intrinsically a fair one, that no undue advantage is obtained, or that a full consideration is paid, or even that the price is the highest which could be obtained. The policy of equity is to remove every possible *temptation* from the trustee. The rule also applies alike where the sale is private, or at auction, where the purchase is made directly by the trustee himself, or indirectly through an agent, where the trustee

acts simply as agent for another person, and where the purchase is made from a cotrustee. . . . ."

■ The purchase by the appellant in this case, however, was not a purchase of property of the estate. Rather, he purchased the community interest of the surviving spouse in the property of the estate. Such a purchase is not forbidden. The applicable principles are summarized in 33 C. J. S. 1350, § 304, as follows:

"While an executor or administrator may, if the transaction is fair and the consideration adequate, purchase or acquire all or part of the interest of a legatee or distributee, such a transaction should be closely scrutinized, for the relation of the parties makes such a dealing suspicious and imposes on the representative the burden of showing that no advantage has been taken by him. It is the duty of the representative to disclose the facts fully and fairly to the heir, and if the transaction is tainted with fraud or imposition it will not be allowed to stand. In determining whether a distributee received an adequate price for property sold by him to the personal representative, the value of the property should be ascertained as of the date of the sale; but subsequent statements by the representative concerning the value of the property can be considered as bearing on the good faith of his previous representations to the distributee at the time of the purchase.

"*Who may object.* Where the personal representative purchases the interest of a particular heir or legatee, only the vendor can object to the transaction, and the other heirs or legatees have no right to object."

The law is similarly stated in 21 Am. Jur. 736, § 632. In this jurisdiction, the rule has been applied in *In re Goss' Estate,* 73 Wash. 330, 132 Pac. 409; *In re Johnson's Estate,* 187 Wash. 552, 60 P. (2d) 271, 106 A. L. R. 217; and *O'Neile v. Ternes,* 32 Wash. 528, 73 Pac. 692. In *In re Goss' Estate,* we said:

"There can be no doubt but that Mrs. DeHaven had a right to sell or assign her interest in the estate of Anson Goss as residuary legatee, and that Mrs. Shanahan [the administratrix] had an equal right to purchase such interest, so long as in doing so she did not use the money of the estate to obtain a pecuniary benefit to herself and thus perpetrate a fraud upon those to whom she occupied a fiduciary

relation. There is nothing in this record to support a finding that Mrs. Shanahan, as administratrix, did anything that could be regarded as in fraud of the equitable rights of these appellants. [other beneficiaries] All that appears is that individually she purchased the residuary interest of her sister. This, we think, she had a right to do, and no court would, because of this fact alone, be justified in holding such an act was fraudulent as against these appellants, and because of such fraud they would be entitled to share with Mrs. Shanahan in an equal division of the residuum of this estate. Contracts of the character of that between Mrs. Shanahan and Mrs. DeHaven, when fair in themselves, will be upheld as any other contracts, and the mere fact that the parties to the contract are the administratrix and legatee under the will does not of itself establish fraud. [Citing cases.]"

Here as in that case, the executor did not use funds of the estate to make the purchase; and here, as there, the suit was not brought by the vendor.

The early case of *O'Neile v. Ternes, supra,* is a case very much in point. There the executors of an estate purchased from a beneficiary 100 shares of stock which had been specifically bequeathed to the plaintiff. Later, when it was ascertained that the stock could be sold at a higher price than that which the executors paid for it, the plaintiff brought suit to rescind the sale. The evidence showed that, at the time the plaintiff sold the stock to the executors, she knew that it was worth more than they paid for it and she did not rely on any false representations made to her by one of the executors, Ternes, but sold the stock at that price simply because she wished to "get something out of it."

The plaintiff claimed that she was entitled to relief because Ternes had betrayed her confidence and violated his trust duties and obligations. Of this contention, this court said:

" . . . If the respondent Ternes was appellant's trustee, he became such, not by her own act or appointment, but because he was one of the executors of Nolan's will, or because he was an officer of the respondent corporation, and a stockholder therein. And the question arises, what duty or obligation did he owe appellant, pertaining to either

of those positions, which he failed to perform? As an executor, it was his duty to collect the assets, pay the debts of the decedent, and the funeral and other necessary expenses, and distribute the residue of the estate in accordance with the will of his testator. In short, it was his duty to take possession of, settle, and distribute the estate; all of which it appears was done with the approval of the court. All that appellant had a right to require at the hands of the executors, or either of them, so far as these shares of stock are concerned, was the delivery of the stock to her or her assigns at the time the estate was settled. This stock was a specific legacy to appellant by the terms of the will. She had the right to sell it to whomsoever she pleased, and Mr. Ternes had the right to purchase it for his wife, or even for himself. Schouler, Executors (3d ed.), § 358. Mrs. O'Neile received her own price for it, which was more than twice the appraised value, and the evidence does not show that it was actually worth more at the time of the sale. . . ."

The situation of the plaintiff in that action was very much like that of Mrs. Holmes in this action. Like Mrs. O'Neile, Mrs. Holmes sold her stock because she wanted to realize something on it immediately; she received her own price for it; and the evidence in this case did not show that it was worth more than the price that was paid at the time of the sale. In that case, the *vendor* was not sustained in her attack on the sale; here, the vendor ratified the sale and has never challenged it. The attack is made by a residuary beneficiary, who has no interest in Mrs. Holmes' share of the estate, and no equitable right to share in any profit which her vendee might make. It is also significant, though we do not find it necessary to discuss the point, that the interest which Mrs. Holmes sold to the appellant was not that of a beneficiary of the estate, but was her community interest in the property which was involved in the estate. If there was a fiduciary relationship between her and the appellant executor, the respondent has failed to suggest the legal principle upon which it was founded.

In any event, assuming there was a fiduciary duty owed by the appellant to Mrs. Holmes, and assuming that he overreached her and violated that duty, this is a matter

which cannot concern the respondent, and he has no standing to object.

The respondent urges, in support of that portion of the judgment which decreed that any profits resulting from the resale of Mrs. Holmes' interest should inure to the benefit of the estate, his theory that no community interest was created because there was no valid delivery of the deed and bill of sale by which Jack Shea conveyed his separate property to the community. The evidence tended to show that the deed and bill of sale were executed and delivered to the appellant at the same time as the will; that they were never delivered to Mrs. Holmes before the death of Jack Shea, but were filed for record by the appellant after the death of Jack Shea. The will contained the following provision:

"Article III. I hereby declare that I have heretofore named Dorothy Shea, my wife, as beneficiary of an insurance policy and I have executed documents conveying whatever separate interest in property, of whatsoever nature or wheresoever located that I may have, to the community composed of DOROTHY SHEA, my wife, and myself. It is my desire that my wife, DOROTHY SHEA, if she survive me, shall receive the insurance money and her share of all community property and receive nothing further from my estate, except as provided in Article IV."

 It is well settled that the nature of separate property may be changed to that of community property by the voluntary act of the spouse owning it. *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409; *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129; *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731.

 Here, by the voluntary act of Jack Shea, his separate property was converted to community property. The instruments conveying the property to the community were delivered to his attorney, who was presumably the attorney for the community. His intention that title should pass as of that moment is manifested in the will.

In the case of *Mathewson v. Shields,* 184 Wash. 284, 50 P. (2d) 898, it was held that the delivery of a deed to a third person, to be handed to the grantee upon the grantor's

death, sufficiently showed the grantor's intent to part with dominion and control of the deed, where the language used at the time of the delivery indicated clearly an intention to make it operative.

And in the case of *White v. Chellew,* 108 Wash. 628, 185 Pac. 621, it was held that, where a deed and will of the same property were made *in extremis* one day before the grantor's death, and it was evident no reservation was made, an immediate delivery of the deed was intended where the grantor stated that the instruments were all right and left them with the scrivener without directions as to delivery. Quoting from the case of *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756, we said:

" 'The question of the delivery or nondelivery of a deed is one that must be governed by the intent of the grantor. *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324. Such intent must be gathered from the terms of the deed itself, if it can be consistently done. If the language used is susceptible of more than one construction, that one must be adopted which militates most strongly against the interests of the grantor. . . .

" 'A grantor's deposit of his deed with a third party, to be held by such third party until the grantor's death and then delivered to the grantee therein named, the grantor reserving no dominion or control over the deed during his lifetime, constitutes a valid delivery and vests an immediate estate in the grantee, subject to a life estate in the grantor.' "

It is arguable that a deed of separate property by the husband to the community need not be delivered to the wife, since he is the manager of the community and delivery to him is delivery to the community. But we need not decide the merits of this argument, inasmuch as the authorities we have cited fully sustain the validity of the delivery in this case.

In regard to the claim of Mrs. Holmes for reimbursement for expenditures which she had made on behalf of the estate, we think the trial court was in error in allowing the appellant to recover this reimbursement. This was not an interest of a beneficiary which he purchased, but

a claim against the estate. RCW 11.48.080 provides *inter alia:*

" . . . No executor or administrator shall purchase any claim against the estate he represents, but however the executor or administrator may make application to the court for permission to purchase certain claims, and if it appears to the court to be for the benefit of the estate that such purchase shall be made, the court may make an order allowing such claims and directing that the same may be purchased by the executor or administrator under such terms as the court shall order, and such claims shall thereafter be paid as are other claims, but the executor or administrator shall not profit thereby."

The appellant did not apply to the court for permission to purchase the claim or claims of Mrs. Holmes and he did not receive court approval of the purchase. Since there was never a segregation made of the portion of the $15,000 purchase price which was payment for the claim, there is no way for the appellant to prove that the allowance of the claim would not constitute a 100 per cent profit to him, and he has not attempted to offer such proof. Under the circumstances, we must assume that this would be the result if the claim were allowed.

The wisdom of the statutory provision forbidding the executor or administrator to purchase claims against the estate without prior court approval, is demonstrated by this case. Armed with his assignment of the claim of Mrs. Holmes, the executor has come before the probate judge and petitioned the court to allow him reimbursement for all of the payments which Mrs. Holmes made, where, if his interest were only in conserving the estate, it would have been his duty to argue that the bequest of income was only a bequest of net income, not gross income, and that, in any event, Mrs. Holmes was herself liable for one half the expenditures in behalf of the motel, since she owned a half interest. He has asked the court to allow all of the fee claimed by the attorney who represented Mrs. Holmes when she was executrix, although he once advised that attorney that she was personally liable for a large part of the fee

because the services were rendered to her and not to the estate. In short, he has yielded to the temptation to enlarge his claim as much as possible, contrary to the interests of the legatees; and it was the manifest purpose of the statute to remove just such a temptation.

The policy expressed in this statute is well established in the common law and embodied in the statutes of many states. See annotation, Purchase by executor, administrator, or trustee of claims against estate or trust. 128 A. L. R. 917.

Clearly, this claim was not allowable to the appellant, and the court erred in entering that part of the order which permitted him to recover reimbursement for the expenditures of Mrs. Holmes.

The case is remanded with directions to enter an order on the executor's report which is consistent with the holdings set forth in this opinion. Neither party shall recover costs on this appeal.

FINLEY, C. J., HILL, WEAVER, and FOSTER, JJ., concur.

---

January 30, 1963. Petition for rehearing denied.