[No. 1436-1.    Division One—Panel 2.    May 7, 1973.]

B. JOY GREENE MERRIMAN, *Respondent*, v. ROBERT S. CURL, *Defendant*, MARGARET H. CURL, *Appellant*.

*McIntosh & Simmons* and *Phil McIntosh*, for appellant.

*Elhart & Corning* and *Larrie E. Elhart*, for respondent.

CALLOW, J.—Margaret Curl, the defendant and cross-claimant, is the wife of the defendant Robert Curl. The plaintiff is B. Joy Greene Merriman.

In King County Cause No. 723798, the plaintiff B. Joy Greene Merriman was granted a judgment for $6,050, rep-

resenting funds procured by fraud and funds loaned to and not repaid by Robert S. Curl. This judgment was against Robert S. Curl and the community composed of Robert Curl and Margaret Curl, these funds having been expended for community purposes. An additional judgment was granted under the same cause number separately against Robert S. Curl for $1,500, this sum having been expended for separate purposes. Costs and attorneys' fees were also awarded the plaintiff, Ms. Merriman. In the same action, the court awarded the defendant Margaret Curl damages of $2,000 plus costs on her cross claim brought against the plaintiff for criminal conversations engaged in between the plaintiff Merriman and the defendant husband Robert Curl.

In a separate action, King County Cause No. 727375, based on different fraudulent actions than were involved in the prior cause, the court awarded the plaintiff B. Joy Greene Merriman a judgment against Robert and Margaret Curl and the marital community composed thereof, in the sum of $3,000 plus interest at the rate of 6 percent from September 18, 1969, together with costs and statutory attorneys' fees.

The defendant cross-claimant Margaret Curl caused a writ of execution to be issued on her separate judgment for $2,000 in cause No. 723798 against Ms. Merriman. Ms. Merriman moved to quash this writ and to offset the judgment in favor of Margaret Curl in No. 723798 against the judgment against Robert and Margaret Curl in cause No. 727375.

When the motion was denied, the plaintiff Merriman had a writ of execution issued in cause No. 727375; and at a sheriff's sale, the sheriff sold

The interest of Robert S. Curl and Margaret Curl, his wife, and the marital community composed thereof in the Judgment of Margaret H. Curl against B. Joy Merriman, formerly B. Joy Greene in the amount of $2000.00 and her costs taxed and interest.

to the plaintiff who satisfied it as of record. The defendant Margaret Curl moved for correction of the clerk's record

and for an award of damages and now appeals from the denial of that motion.

The defendant Margaret Curl argues that the judgment in her favor for $2,000 was separate property, that the Curl community had no interest in that judgment, and that the plaintiff Ms. Merriman, therefore, could not acquire an interest in that judgment and had no authority to satisfy it of record.

We consider initially the effect of the community property agreement that was entered into between Robert and Margaret Curl on March 13, 1969, prior to the commencement of the causes involved herein. That agreement said:

[I]t is hereby agreed, covenanted, and promised:

I.

That all property of whatsoever nature or description whether real, personal or mixed and wheresoever situated now owned or hereafter acquired by them or either of them shall be considered and is hereby declared to be community property.

II.

That upon the death of either of the aforementioned parties title to all community property as herein defined shall immediately vest in fee simple in the survivor of them.

We will consider initially the effect of that agreement upon the judgment that was entered in favor of Margaret Curl against Ms. Merriman. If that judgment was converted, in any event, into community property by the agreement between the husband and wife, then we need not consider whether the judgment was separate or community. If it was a community judgment as a result of the community property agreement, then it was subject to execution by the plaintiff Ms. Merriman to satisfy her judgment against the Curl community. In *Stevens v. Depue*, 151 Wash. 641, 276 P. 882 (1929), a similar approach was taken with the court saying at page 652:

The question is complicated somewhat by our community property laws and the fact that, at the time the

liability was incurred and the suit commenced, appellant and her husband had not been divorced, were not even separated, and the presumption might be that the recovery would become community property.

In the *Beach* case [*Beach v. Brown,* 20 Wash. 266, 55 P. 46, 72 Am. St. R. 98 (1898)], . . . the action was brought after the wife had obtained a divorce, the community having been thereby destroyed, the court found it unnecessary to concern themselves over the proposition as to whom the damages, when secured, would belong.

. . . It is enough to hold, . . . that the wife has the right to sue for damages for unjust usurpation of her natural rights. Whether, when recovered, the damages will belong to her or the community is immaterial to us. Since she has the right to sue for her damages alone, she has the concomitant sole right to satisfy and discharge any judgment in her favor.

[In] *Humphrey v. Pope,* 122 Cal. 253, 54 Pac. 847, . . . the code of California specifically gave the right to a wife to sue in her own name just as the code of this state does. The supreme court held that she had a right to sue for damages for alienation of her husband's affections without joining the husband. . . . the court observed:

"Where the husband sues for the loss of his wife's affections, the fact that the damages might or might not be held to be community property would not affect his right of action, and we can see no reason why any different rule should apply where the wife brings the action. Conceding, but not deciding, that any damages the plaintiff may recover would be community property, we think the action properly brought in her name alone."

. . .

Our conclusion is that appellant had the right to sue alone for the damages claimed, regardless of whether such damages, when recovered, would become community or separate property.

The starting point of our discussion is *Volz v. Zang,* 113 Wash. 378, 194 P. 409 (1920), which held that a husband and wife could enter into an agreement as to the status or disposition of their community property to take effect upon the death of either and could contract to change

community property into separate property and separate property into community property. This construction of RCW 26.16.120 which reads:

Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: *Provided, however,* That such agreement shall not derogate from the right of creditors, nor be construed to curtail the powers of the superior court to set aside or cancel such agreement for fraud or under some other recognized head of equity jurisdiction, at the suit of either party.

has led to much discussion as to the legal meaning and effect of the community property agreement which is unique to the State of Washington.

The theory of *Volz v. Zang, supra,* has been followed by the later cases concerned with this problem. In *State ex rel. Van Moss v. Sailors,* 180 Wash. 269, 39 P.2d 397 (1934), the court said at page 274:

It is undoubtedly true that husband and wife may, by proper agreement or conveyance, change their separate property into community property and their community property into separate property. *Gage v. Gage,* 78 Wash. 262, 138 Pac. 886; *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409.

and again in *In re Estate of Shea,* 60 Wn.2d 810, 816, 376 P.2d 147 (1962):

It is well settled that the nature of separate property may be changed to that of community property by the voluntary act of the spouse owning it. *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409; *In re Buchanan's Estate,* 89

Wash. 172, 154 Pac. 129; *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731.

A further connotation to the holding was discussed in *Neeley v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964), where we find at page 933:

> This statute is part of the community property law of this state, and provides clear authority for an agreement between spouses disposing of any property interest which is community property. The dispositive device created by this statute was extended in permissible scope to include all property interests of either the husband or the wife in *Volz v. Zang* (1920), 113 Wash. 378, 194 Pac. 409, which held that the separate property of either spouse could be converted to community property by agreement. The community property agreement can, therefore, control the disposition of both community property and the separate property of either spouse, the latter by converting the separate property to community property for purposes of the instrument. *In re Brown's Estate* (1947), 29 Wn. (2d) 20, 185 P. (2d) 125.

Likewise, *In re Estate of Verbeek,* 2 Wn. App. 144, 467 P.2d 178 (1970), stated at page 157:

> Thus, in *Volz v. Zang,* 113 Wash. 378, 194 P. 409 (1920) the court held that a written agreement between husband and wife that each parcel of land wherever situated, both presently owned or thereafter to be acquired, should be deemed community property was a valid contract and operated to convert separate real property into community property.

The legal writers on the subject have expressed their understanding of the statute and its construction as allowing a husband and wife to affect the status of property as of the date of the execution of the agreement or upon the death of the first to die. In Comment, *The Community Property Agreement Statute,* 25 Wash. L. Rev. 165 (1950), we find the following observations:

> The scope and use of the community property agreement is necessarily broad. It would seem that all property held as community property by the spouses, whether real or personal, tangible or intangible, can come under such an agreement. Under the doctrine of *Volz v. Zang*

all property formerly held by the spouses as either separate or community property can be subjected to this instrument, and further, all future property interests acquired by the spouses can likewise be affected by the agreement. . . . Thus we have as a result an instrument which could be used in many ways; it may cover all types of property held by the parties as either their separate or community property; . . .

. . . Because no property interest is affected prior to the death of one spouse,[20] it could not operate to give notice prior to that time.

[20]A distinction should be made between the community property agreement and an instrument which contains a community property agreement and a clause incorporating the doctrine of Volz v. Zang, 113 Wash. 378, 194 Pac. 409 (1920). Upon execution of such an instrument, the clause would affect an immediate transfer of the separate property of the spouses to their community estate.

(Other footnotes omitted.)

Following this, in 33 Wash. L. Rev. 112, 113 (1958), it is stated:

A property agreement determining the immediate status of personal property between a husband and wife is a non-statutory creature. RCW 26.16.050 provides for conveyances of real property between spouses, and RCW 26.16.120 provides a method of disposing of commmunity property to take effect upon the death of one of the spouses, but there are no statutes providing for the immediate disposition of property by agreement of the spouses.

Although there is no statutory provision so providing, the Washington court has upheld agreements, oral or written, between a husband and wife making what would normally be community property into the separate property of one of the spouses, or what would ordinarily be separate property of one of the spouses, community property. These agreements have been held valid even though they apply to property to be acquired in the future, as well as to property presently owned.

(Footnotes omitted.)

The 1950 comment in 25 Wash. L. Rev. 165 was reexam-

ined and brought to date by Brachtenbach, *Community Property Agreements—Many Questions, Few Answers,* 37 Wash. L. Rev. 469 (1962). It was there said:

> The agreement . . . is recognized as sui generis.
>
> The statutory requirements for such an agreement are: (1) it must be between husband and wife, (2) in writing, (3) concerning the whole or any portion of community property, (4) then owned or thereafter acquired, (5) under the hands . . . of the parties, (6) to be witnessed, [and] acknowledged . . . in the same manner as deeds.

(Footnotes omitted.) Commenting on the problems of creditors with respect to such agreements the writer said at pages 471, 473:

> Prior to the debtor-spouse's death, the problems that may arise are traceable to the *Volz v. Zang* type of agreement. That case established that a properly drafted agreement can convert the separate property of one of the spouses to community property of the marital community. The rationale of the case indicates that the conversion is effective immediately upon the execution of the agreement. The court said: "Here, by the voluntary act of the parties, their separate property *was conveyed* to the community." (Emphasis added.)
>
> . . .
>
> The agreement may work to the advantage of the creditor. Consider a creditor who has a judgment against the husband individually and against the marital community. If the spouses execute an agreement converting all separate property into community, the wife's separate realty now becomes community property. Since the judgment lien attaches to after-acquired community real estate, the creditor appears to have a windfall.

(Footnotes omitted.) *See also* Gilchrist, *Washington Disinherits the Non-Native Wife,* 46 Wash. L. Rev. 283, 291 (1971); Cross, *The Community Property Law in Washington,* 15 La. L. Rev. 640 (1955).

A community property agreement adopted by the parties can:

1. Dispose of the property of the parties at death,

2. Affect the status of the property of the parties at death, and

3. Affect the status of the property of the parties at the time of the execution of the agreement.

The agreement that the husband and wife entered into was an agreement which first of all declared all property of whatever nature and whether then owned or thereafter acquired by either to be community property. This was a declaration of status at the time of the instant of the execution of the agreement. The agreement as its second function then said that upon the death of either the title to their property, which had been declared as community property by the agreement, would then vest in the survivor. The judgment of Margaret Curl against Ms. Merriman was the community property of the Curls subject to execution to satisfy the judgment of Ms. Merriman against them.

Lest this disposition seem harsh, we note that the record before us does not disclose that any divorce proceeding was commenced by Margaret Curl. A divorce proceeding could have disposed of the property between the husband and wife and the decree awarded her the judgment which she had against Ms. Merriman, as her separate property.

Since the community property agreement was of such nature that it changed the status of all separate property into community property when it was acquired and was in existence at the time of the entry of the judgment in King County Cause No. 723798, this judgment was subject to execution by the plaintiff Merriman to satisfy the judgment which she held against the community of Robert and Margaret Curl.

Affirmed.

HOROWITZ and WILLIAMS, JJ., concur.

Petition for rehearing denied July 18, 1973.