[No. 5787–1. Division One. December 11, 1978.]

*In the Matter of the Marriage of* ELNORE A. CAMPBELL, *Respondent, and* THOMAS I. CAMPBELL, *Appellant.*

*Miles F. McAtee,* for appellant.

*Halverson, Strong, Moen & Chemnick, Sidney J. Strong,* and *Lowell K. Halverson,* for respondent.

JAMES, J.—Thomas Campbell appeals several provisions of the decree of dissolution dissolving his marriage to Elnore Campbell. The challenged provisions relate to child support and the division of assets. We affirm the decree with a modification of the child support provisions.

The parties were divorced in 1977 after 11 years of marriage. Two children had been born to the marriage, a daughter in 1969 and a son in 1973. Mr. Campbell was 38 years old and Mrs. Campbell 34 at the time of the dissolution.

In 1970, Mr. Campbell started his own manufacturer's representative business under the name of Datacom Associates. During the marriage, the parties accumulated an estate which the court valued at over $700,000 by investing a substantial portion of Datacom's profits in rental properties and other income–producing assets.

The trial judge found that all the assets owned by the parties were community property. The judge evaluated the assets and divided them, giving each party a substantially equal portion of the estate.

On appeal, Mr. Campbell challenges the court's characterization, valuation, and division of several of the parties' assets. It is a well–settled rule that a trial court has considerable discretion when making a division of property in a dissolution action. The court's disposition will not be interfered with on appeal unless there is a showing of a manifest abuse of discretion. *Cleaver v. Cleaver,* 10 Wn. App. 14, 516 P.2d 508 (1973); *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972). A review of the record discloses no abuse of discretion by the trial judge in this case. The trial judge made detailed findings of fact and conclusions of law which are substantially supported by the record and applicable law.

The trial court characterized all of the parties' property as community property based on a community property agreement executed in 1975. The agreement provided in part that all property "now owned or hereafter acquired by them, or either of them, should be considered, and is hereby declared to be community property." Finding of fact No. 6. Mr. Campbell argues that the community property agreement should not have been enforced because "neither party realized the effect of it upon dissolution." We do not agree.

Mr. Campbell's claim that he misunderstood the effect of the agreement upon dissolution does not impair its validity. There was substantial evidence to support the court's finding that he had "extensive experience in drafting and negotiating contracts" and that "[t]he language of the community property agreement is clear and unambiguous." Finding of fact No. 6. The agreement did not create a disproportionate division of the parties' property which would suggest possible overreaching by one party, a concern of the court in *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972) and *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977). The only property affected was a four–plex owned by Mr. Campbell prior to the marriage, which the court characterized as community property pursuant to the agreement.

Several of Mr. Campbell's assignments of error challenge the valuation and division of certain assets. Specifically, Mr. Campbell claims that the trial court erred in evaluating Datacom's goodwill, the Keogh Plan account, the family home and furnishings, and an automobile awarded to Mrs. Campbell. He also argues that the family home should have been awarded to him rather than Mrs. Campbell because he had used it as his place of business for Datacom Associates. We find no abuse of discretion.

Mr. Campbell argues that Datacom Associates has no goodwill value because the business has no physical assets and is not a salable enterprise. The business' representation contracts, he claims, are based solely on his personal reputation and he argues that a 30–day cancellation clause in the contracts makes the company's future productivity speculative.

In *In re Marriage of Lukens,* 16 Wn. App. 481, 486, 558 P.2d 279 (1976), it is stated with respect to the goodwill of a business or professional enterprise that

> [a]lthough there appears to be no definitive formula for ascertaining the value of goodwill, . . . it nevertheless does seem settled that the question is one of fact and

that opinion evidence is admissible though not conclusive.

(Citations omitted.)

The fact that a business is not salable does not necessarily mean its goodwill has no value. *In re Marriage of Lukens, supra.* When the value of goodwill is supported by evidence introduced at trial, it will not be disturbed on appeal. *In re Marriage of Lukens, supra.*

Based on evidence presented at trial, the trial court found that Datacom had a good reputation with several large customers, some of whom had been with Datacom since 1971. It also found that the company's goodwill was not "dependent upon the unique personal services" of Mr. Campbell and many sales functions could be handled by an employee. Finding of fact No. 8. Datacom had an average income of $50,000 over a 6–year period. The $50,000 value placed on Datacom's goodwill is sustained by these findings.

The other valuations challenged by Mr. Campbell are also sustained by the evidence and will not be disturbed. The court's decision to award the family home to Mrs. Campbell, who has custody of the minor children, is well within its discretion, especially in light of the fact that Datacom's business is not dependent upon access to the public.

Finally, we address Mr. Campbell's arguments relating to the provisions for child support. The decree requires that Mr. Campbell pay child support in the amount of $400 per month per child "while the children remain dependent upon their parents."

The decree also provides that

> as an additional amount of child support, the respondent shall pay to petitioner and petitioner shall deposit in a college education trust fund for the children $113.00 per month for Tiffany and $70.00 per month for Thomas. Such fund shall not be available to the children except for educational purposes. If the trust funds are not used

for college education purposes by the time the children reach the age of 24 years, then the trust fund balance shall revert to respondent or his assigns.

Payments for the trust fund are to be made by Mr. Campbell until each child reaches 18 years of age.

Mr. Campbell argues that the court erred in determining the amount and duration of monthly child support payments and in requiring him to also pay an additional amount each month into an educational trust fund.

In his oral opinion, the judge made the following comments regarding the duration of child support payments:

> I specifically use the term "dependency," as suggested by either Mr. Velategui or Mr. Halverson, rather than "minority" because I think the Legislature did mean to change the support obligation when they changed the words "minority" or "majority" to "dependency." As was pointed out, we will have to let the Supreme Court decide if that is what they did mean.

Our Supreme Court has since construed the 1973 dissolution act in *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978).

In *Childers* at 597, the court held that "the trial court is empowered under RCW 26.09 to order support to continue past a child's majority" and that the issue on appeal is whether the court abused its discretion in doing so.

The statute permits the trial court to order that a parent pay support for a child if (1) the child is a child of the marriage, (2) the child is "dependent," and (3) the parent owes a "duty of support" to the child. RCW 26.09-.100; *Childers v. Childers, supra.*

The children here are children of the marriage. At the time of trial, they were very young. Whether the children would have remained dependent on their parents for support beyond the age of majority if the parents had stayed together is a question of fact. *Childers v. Childers, supra.*

The court must consider "all relevant factors" in making this determination. RCW 26.09.100. These factors

include the child's needs, prospects, desires, aptitudes, abilities, and disabilities, and the parents' level of education, standard of living, and current and future resources. Also to be considered is the amount and type of support (*i.e.,* the advantages, educational and otherwise) that the child would have been afforded if his parents had stayed together.

*Childers v. Childers, supra* at 598.

The trial judge found that:

Had the marriage not failed, the parties would have provided the financial opportunity for continued education of the children past high school, whether the education fund was for college, trade school, vocational training, or other pursuits. Both parties were seriously considering creating a tax–free Clifford Trust prior to the onset of the dissolution. At the trial in this action, both parties expressed a desire that the children obtain a college education if they have the capability and desire to do so, and that funds should be set aside to assure that that opportunity would be available when the children have completed high school.

Finding of fact No. 5(A), in part.

No challenge has been made to these findings. Therefore, they become established facts in the case. *Jordin v. Vauthiers,* 89 Wn.2d 725, 575 P.2d 709 (1978).

Under these facts, it was not an abuse of discretion to define the children as dependents while they pursue a college education beyond the age of majority and impose upon the parents a duty of support.

The amount of child support required for the needs of a child is also subject to the trial judge's discretion. *Puckett v. Puckett,* 76 Wn.2d 703, 458 P.2d 556 (1969).

Evidence at trial established that the payments provided for in the decree will accumulate an educational trust fund of approximately $20,000 for each child at the time he or she reaches 18. This figure was computed to provide for the projected costs of attending the University of Washington when these children reach college age. Included in the calculations were tuition, books, room and board, personal expenses, and transportation for a 3–quarter academic year.

Also considered was the fact that many students contribute to their educational expenses by working during the summer and part time during the school year.

The amount of money the trial judge required Mr. Campbell to pay into the trust fund will insure that sufficient funds are available for the children's college education. The amount is supported by the evidence and reflects no abuse of discretion.

We now turn to consideration of the propriety of the amount and duration of monthly child support payments.

Mr. Campbell claims the amount of required support payments, $800 per month, is excessive based on his earning capacity, Mrs. Campbell's income potential, and the parties' living expenses of $1,400 per month prior to dissolution. We do not agree.

The amount of child support required is dependent on many factors, including the needs of the children and the financial resources of the parents. *Puckett v. Puckett, supra.* Mr. Campbell received all interest in Datacom Associates, which has produced an average income of $50,000, together with several income–producing real properties. Mrs. Campbell's income from the income–producing assets awarded to her will be substantially disproportionate. The amount of child support ordered is supported by the record and not an abuse of discretion.

We hold, however, that it was error to require support payments of $400 per month per child beyond majority "while the children remain dependent upon their parents." Under the criteria set out in *Childers,* there is no evidence to support imposing upon Mr. Campbell a duty of support in addition to providing for the children's college education through the educational trust. This provision would result in payment of double support, which is also clearly inequitable.

The decree should be modified to provide that support payments cease when each child reaches the age at which he or she becomes eligible for funds in the educational trust—"when they complete high school or reach age 18,

whichever occurs first." Finding of fact No. 5(A). At that point, the children will be emancipated or remain "dependent" for the purpose of pursuing a college education.

Mrs. Campbell requests that we award her $3,520 in attorney's fees for maintaining this appeal and $450 in attorney's fees for the services of the children's guardian ad litem. We do not find this to be a proper case for a discretionary award of attorney's fees to either party. RCW 26.09.140.

Affirmed as modified.

WILLIAMS and DORE, JJ., concur.