[No. 7242-4-II.   Division Two.   November 19, 1985.]

*In the Matter of the Marriage of* GEORGE P. PILANT, *Respondent, and* MARJORIE P. PILANT, *Appellant.*

174

*Ronald E. Thompson* and *Thompson, Krilich & LaPorte, P.S.,* for appellant.

*William E. Rohrs,* for respondent.

REED, J.—An ex–wife appeals from the distribution of property in a decree of dissolution of marriage. The issues before us are: (1) whether filing of a petition for dissolution automatically abrogates a community property agreement; (2) whether the trial court erred in its method of valuation of the husband's pension benefits; and (3) if so, whether that error rendered the property distribution so unfair and inequitable as to be an abuse of discretion. We affirm the trial court.

The parties were married in 1949. Out of their earnings

during marriage they acquired a home and some recreational real property.

During marriage the wife acquired, by inheritance, by the use of inherited funds and through inter vivos gift from her family, significant real estate holdings, as well as cash and securities of considerable value. She also pursued a career outside the home and accumulated savings and a right to future retirement benefits. At the time of the dissolution hearing in 1983, she was 55 years old, in apparent good health, continuing to work, and not expecting to retire until 1992.

During marriage the husband acquired his entitlement to retirement benefits; he retired in the mid–1970's. At the time of the dissolution hearing in 1983 he was 63 years old and a diabetic. After retirement, he had undergone major cardiovascular surgery. He was receiving both his retirement benefits and a federal disability benefit, but had little, if any, separate estate.

On March 16, 1972, the parties signed a community property agreement, by the terms of which they converted all separate property, whether previously or subsequently acquired, into community property.

In 1982 the husband petitioned for dissolution. The trial court found that the community property agreement of 1972 unambiguously was intended as an immediate conveyance of all separate property to the marital community. Consequently, all the property of the parties, whenever and from whatever source acquired, was characterized as community property.

At the dissolution hearing the wife introduced the testimony of an actuary on the present value of each party's entitlement to retirement benefits. The expert's opinion was based upon a standard actuarial reference. He valued the husband's pension by the decreasing probability that the husband would survive to receive continuing benefits. The statistics employed were based on the mortality of people of different degrees of health, but the result was an average and did not predict the husband's particular life

expectancy. The lowest present value of the husband's retirement benefits was $94,500.

The court determined that, in reducing the husband's retirement benefits to present value, it must take into account his life expectancy, which it believed had been reduced below the statistical norm by his severe health problems. The court valued the husband's entitlement to retirement benefits at $47,000, less than 50 percent of the lowest total amount calculated by the expert witness actuary.

The court distributed to the husband the retirement benefits he had earned. The couple's home went to the husband, while the wife received the recreational real property. The court also awarded to the husband the proceeds from the wife's installment sale of an interest in real property held in her name alone. Otherwise, the court distributed to the wife all the remaining personal property that she had acquired during marriage, and all the property that she had received by gift or inheritance or through the use of inherited funds, even though the court had characterized all of these as community property. From this distribution, the wife appeals.

The trial court exercises broad discretionary powers, and an appellate court will overturn a property distribution only on a showing of manifest abuse of discretion. *In re Marriage of Washburn,* 101 Wn.2d 168, 179, 677 P.2d 152 (1984); *In re Marriage of Glorfield,* 27 Wn. App. 358, 360, 617 P.2d 1051, *review denied,* 94 Wn.2d 1025 (1980). Abuse of discretion does not exist unless it can be held that no reasonable person would have ruled as the trial court did on the facts before it. *In re Marriage of Young,* 18 Wn. App. 462, 465, 569 P.2d 70 (1977).

A court must arrive at a just and equitable disposition of the property and liabilities of the parties, with reference to relevant factors, including the nature and extent of community property and the nature and extent of any separate property. RCW 26.09.080. All property of the marital partners, both separate and community, is before the court and

available for distribution. *In re Marriage of Smith,* 33 Wn. App. 147, 151, 652 P.2d 391 (1982). The characterization of property does not control the division of it upon dissolution. The statutory goal is a fair and equitable distribution. RCW 26.09.080; *In re Marriage of Konzen,* 103 Wn.2d 470, 477–78, 693 P.2d 97, *cert. denied,* ___ U.S. ___, 87 L. Ed. 2d 654, 105 S. Ct. 3530 (1985). *See also In re Marriage of Washburn,* 101 Wn.2d at 177; *In re Marriage of Kittleson,* 21 Wn. App. 344, 351–52, 585 P.2d 167 (1978).

RCW 26.16.120 specifically authorizes marital partners at any time to convert their separate property into community property. *Neeley v. Lockton,* 63 Wn.2d 929, 933, 389 P.2d 909 (1964); *Merriman v. Curl,* 8 Wn. App. 894, 901–02, 509 P.2d 765 (1973). The trial court found that the parties effectively exercised this power when they executed the agreement of March 16, 1972.

The wife argues that the court should have set aside the agreement. She argues that the husband, merely by petitioning for dissolution of marriage, was bringing an action to revoke the agreement. Were she correct, much of the property that the trial court regarded as belonging to the community might have been her separate property, dictating a different distribution scheme. However, her assertion is erroneous. The mere filing of a petition for dissolution does not change the property rights of the parties, and the submission of the community property to a court in a dissolution action does not alone evince an intention to abandon any valuable contractual rights. *In re Estate of Lyman,* 7 Wn. App. 945, 951, 503 P.2d 1127 (1972), *aff'd,* 82 Wn.2d 693, 512 P.2d 1093 (1973).[1]

Second, the wife argues that it was inequitable to distribute to the husband most of the property that the couple acquired during marriage, while awarding to her most of the property that she brought into the marriage or acquired

---

[1]The wife's other challenges to the legal effectiveness of the 1972 agreement were untimely; in any event, these challenges are without merit and we do not address them.

during marriage by gift or bequest. She, of course, believes that the property that she was awarded as her share of community property should have been hers as her separate property, and that she should have been awarded a share in all the other property, which she maintains was the only community property. We have already rejected her fundamental premise. We reject her conclusion as well.

Even if we disregard the present valuation of her husband's retirement benefits, she received property worth $100,000 more than the property awarded to the husband. The economic position in which the former spouses are left is the paramount concern in property distribution. *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967). Considering the circumstances of the parties, we cannot say the court's division was unfair merely because it chose to ignore the true source of some property. The aggregate value of the property before the court was high. The court so found and the wife has not challenged that valuation except as to the husband's pension.

Finally, we reach the wife's objection to the manner in which the court valued the husband's pension. As previously stated, the disposition of property upon dissolution is within the court's sound discretion and will not be disturbed unless it is manifestly unreasonable. *Peterson v. Peterson,* 3 Wn. App. 374, 377–78, 475 P.2d 576 (1970). We will not disturb a property valuation having reasonable support in the trial record. *In re Marriage of Hadley,* 88 Wn.2d 649, 658–59, 565 P.2d 790 (1977); *In re Marriage of Campbell,* 22 Wn. App. 560, 563–64, 589 P.2d 1244 (1978).

■ The wife argues that it was an abuse of discretion for the judge to value the husband's retirement benefit contrary to the sole evidence of its value, the testimony of her actuary. However, a court is not required to accept the opinion testimony of experts solely because of their special knowledge; rather, the court decides an issue upon its own fair judgment, assisted by the testimony of experts. *Richey & Gilbert Co. v. Northwestern Natural Gas Corp.,* 16 Wn.2d 631, 649–50, 134 P.2d 444 (1943). A court may reject

opinion testimony in whole or in part in accordance with its judgment of the persuasive character of the evidence presented. *Brewer v. Copeland,* 86 Wn.2d 58, 74, 542 P.2d 445 (1975).

A pension is property that is properly before the court for distribution with all other property of the parties. *Edwards v. Edwards,* 74 Wn.2d 286, 286-87, 444 P.2d 703 (1968). When the court must determine the present value of retirement benefits to carry out its scheme of distribution, it finds little guidance in the case law of this state.[2] We attempt now to clarify this question, with some attention to the law of sister states.

▮ Whether or not the pension is matured, the first step is to determine its future value, expressed as a lump sum. Discount factors are then employed to calculate the present cash value of this sum. *See* B. Goldberg, *Valuation of Divorce Assets* § 9.5, at 251 (1984); Projector, *Valuation of Retirement Benefits in Marriage Dissolutions,* 50 L.A. B. Bull. 229, 231 (1975); *accord, DuBois v. DuBois,* 335 N.W.2d 503, 506 (Minn. 1983).

Here, the court did not question the actuary's discounting to present value. Rather, the court questioned the validity of his first step, because it was not based on a prediction of the husband's actual life expectancy. Other jurisdictions have recognized that, when a matured pension must be valued, the principal inquiry should be into the pensioner's own life expectancy. *See Ramsey v. Ramsey,* 96 Idaho 672, 679, 535 P.2d 53, 60 (1975), *overruled on other grounds in Rice v. Rice,* 103 Idaho 85, 645 P.2d 319 (1982); *Leckie v. Leckie,* 101 N.M. 254, 254-55, 680 P.2d 635, 635-36 (Ct. App. 1984). That prediction may be made on the basis of actuarial tables. *Shill v. Shill,* 100 Idaho 433, 439, 599 P.2d 1004, 1010 (1979).

In Washington such actuarial tables of "average expec-

---

[2]This step would not be necessary, of course, if the trial judge determines to distribute to a spouse an undivided interest in the benefits as they are received. *Cf. In re Marriage of Pea,* 17 Wn. App. 728, 731, 566 P.2d 212 (1977).

tancy of life" are computed and maintained by the Insurance Commissioner, pursuant to statute, for the use of the courts. RCW 48.02.160(1). Our Supreme Court has urged the courts to use these tables when life expectancy must be predicted. *Bradshaw v. Seattle,* 43 Wn.2d 766, 784, 264 P.2d 265, 42 A.L.R.2d 800 (1953). However, Washington appellate courts never have disapproved other actuarial resources, and one other such table was used by the expert witness in this case. Other states, as well, maintain statutory mortality tables for the use of their courts, and those courts have, on occasion, considered how they might best be used. Michigan, for example, recognizes that, if life expectancy is an appropriate or necessary inquiry, then any other actuarial evidence may be accepted. The other evidence, however, must be more accurate than the statutory table, and the best evidence would be particularized expert opinion testimony on the life expectancy of the particular pensioner. *Boyd v. Boyd,* 116 Mich. App. 774, 779 n.2, 323 N.W.2d 553, 556 (1982).

The dissolution court here would have been justified in accepting the actuary's expert opinion as the only evidence of the value of the husband's pension, because the husband introduced no evidence in opposition to that of the actuary. *See In re Marriage of Hadley,* 88 Wn.2d 649, 659, 565 P.2d 790 (1977). However, the court was rightly concerned for the fairness of using a standard mortality table to predict the husband's probable future receipt of retirement benefits. The court was not bound by the expert testimony, and the court's concern for particularizing the husband's life expectancy is consistent with the rationale of present valuation of matured pensions as advanced by the courts of other jurisdictions. The wife offers no authority to the contrary.

Nevertheless, the court had no evidence before it that rationally could have guided it in determining the husband's actual life expectancy. Although its *reason* for discounting the value of the pension, as estimated by the actuary, is of record, its rationale for discounting by more

than 50 percent is not. Neither is the justification apparent for applying that discount to the lowest value to which the expert testified, nor for a conclusion that the court arrived at an accurate evaluation. The trial court erred in this respect. *Cf. Hinzman v. Palmanteer,* 81 Wn.2d 327, 335–36, 501 P.2d 1228 (1972) (jury instruction that omitted a discount factor for reducing future damages award to present cash value was erroneous and correctly was refused). As we have observed above, mischaracterization of property is not necessarily a reversible error, if the distribution is, on the whole, fair and equitable. *In re Marriage of Washburn,* 101 Wn.2d 168, 177, 677 P.2d 152 (1984). Similarly we hold that the erroneous valuation of one item in this particular case, does not require reversal of the otherwise fair and equitable distribution of an estate worth between $546,000 and $675,000.

Finding no abuse of discretion in the trial court's property distribution scheme, we affirm.

WORSWICK, C.J., and PETRICH, J., concur.