IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>DAVID GENE PAULEY,<br><br>          Respondent,<br><br>and<br><br>AUBREY KATE PAULEY,<br><br>          Appellant. | No. 85559-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Aubrey Pauley appeals the valuation of certain real property, the division of David Pauley's retirement accounts, and the amount and duration of spousal support awarded to her by the trial court upon its dissolution of their marriage. She contends that the court failed to consider relevant factors in reaching all of these decisions and abused their discretion. We disagree and affirm.

FACTS

On April 4, 2023, after unsuccessful attempts at mediation, Aubrey and David Pauley[1] both appeared pro se before the Snohomish County Superior Court to dissolve their marriage. The two had been married for approximately 17 years. Throughout the course of the three-day trial, both Aubrey and David testified to their respective beliefs regarding the value of the real property to be divided.

---

[1] For clarity, because they share the same last name, we refer to Aubrey and David by their first names. No disrespect is intended.

Relevant to this appeal, testimony was given regarding the value of a property in Lake Stevens, the balance of retirement accounts, and spousal support for Aubrey.

The court issued an oral decision at the conclusion of trial on May 26, 2023 that set the value of the Lake Stevens house at issue here, divided the retirement accounts, and established the amount and duration of spousal support David was to pay Aubrey. The court valued the Lake Stevens property at $446,100. It allocated the retirement accounts and awarded David some of his own accounts, totaling $143,774, and Aubrey a combination of her own accounts and one of David's, totaling $185,285. Finally, the court awarded Aubrey spousal support until January 2026.

Aubrey timely appealed.

ANALYSIS

Aubrey asserts three errors in this case: the trial court's valuation of the Lake Stevens property, division of the retirement accounts, and award of spousal support. Trial courts have broad discretion to distribute property and liabilities in dissolution proceedings. *In re Marriage of Kaseburg*, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005). When making a property disposition, the court must consider all relevant factors including, but not limited to:

(1) The nature and extent of the community property;

(2) The nature and extent of the separate property;

(3) The duration of the marriage or domestic partnership; and

(4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to

> live therein for reasonable periods to a spouse or domestic partner with whom the children may reside the majority of the time.

RCW 26.09.080. The court is not required to divide community property equally. *In re Marriage of Kaplan,* 4 Wn. App. 2d 466, 480-481, 421 P.3d 1046 (2018). The court's discretion is limited by the requirement that any division must "'appear just and equitable after considering all relevant factors.'" *Id.* (internal quotation marks omitted) (quoting *In re Marriage of White,* 105 Wn. App. 545, 549, 20 P.3d 481 (2001)). "A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). In other words, unless no reasonable judge would reach the same conclusion as the trial court, this court must affirm.

I.      Property Valuation

Aubrey avers that the court erred in assigning a value to the Lake Stevens property, $446,100, that was outside of the range presented by the parties at the trial. Aubrey and David both had a chance to testify about their beliefs regarding the value of the house and each submitted a comparative market analysis (CMA) to the court with proposed values for the property. According to Aubrey's CMA, the house was worth around $900,000, while David's CMA valued the property at approximately $675,000. Neither of the CMAs was entered into evidence. Rene Breen, the real estate agent who prepared the CMA for David, testified as to her

experience and qualifications with compiling CMAs and explained, to the best of her recollection, how she determined the value of the Lake Stevens property. However, Breen was only able to testify generally about the property as she called into the trial without access to her report.

The trial court's findings of fact are reviewed for substantial evidence. *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). This court will not substitute its judgment for that of the trial court on issues of fact. *Kaplan,* 4 Wn. App. 2d at 479. Instead, we affirm the decision of the trial court if there is sufficient evidence to persuade a rational fair-minded person that the premise is true. *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011).

When differing valuations of a property are in evidence, a trial court does not abuse its discretion as long as the assigned value is within the range of evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 250, 170 P.3d 572 (2007). However, if the amounts are not formally admitted as evidence and are merely figures advocated by the parties, the weight to be given to these values is left up to discretion of the trial judge as the trier of fact. *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968). In fact, even with expert witness testimony, "a court is not required to accept the opinion testimony of experts solely because of their special knowledge; rather, the court decides an issue upon its own fair judgment, assisted by the testimony of experts." *In re Marriage of Pilant*, 42 Wn. App. 173, 178, 709 P.2d 1241 (1985).

Although the trial court did not assign a value for the house within the figures set out in David and Aubrey's respective testimony, there was no abuse of

discretion when it set the value of the property outside of the range provided by the parties. The trial court had access to a wide range of financial information from the Pauleys to determine the valuation of the property. Most critically, neither of the CMAs supporting the different amounts were admitted into evidence. Therefore, the court had discretion to set the valuation of the property and give as little or as much weight as it saw fit to the amounts advocated by each party. Aubrey has not met her burden on appeal to show that the trial court abused its discretion here.

II.     Retirement Accounts

Aubrey next argues that the trial court failed to address all retirement accounts, resulting in a distribution that favors David. However, the record clearly establishes that Aubrey was awarded over $40,000 more in retirement funds than David, retaining all of her own retirement accounts and receiving one of David's. Each of the parties had an opportunity to testify about their retirement funds at the hearing. Specifically, as to David's account under Public Employees' Retirement System Plan 2 (PERS 2), the court admitted recent documentation regarding the account into evidence. Although the exact amount in the PERS 2 account was not mentioned at trial, David indicated that it was a "low amount."[2] Additionally, David explained that contributions were made into the PERS 2 account in lieu of social security withholdings and attributed this to his position as a lineman with the Snohomish County Public Utility District.

---

[2] The trial exhibits were not transmitted to this court as part of the record on appeal, so the details of this account are not before us.

There is no requirement that assets be divided equally; the trial court has broad discretion that is limited only by the requirement that any division must be "'just and equitable after considering all relevant factors.'" *In re Marriage of Condie*, 15 Wn. App. 2d 449, 465, 475 P.3d 993 (2020) (internal quotation marks omitted) (quoting *Muhammad*, 153 Wn.2d at 803). Further, "[t]he law does not permit the court to value and distribute social security benefits." *Rockwell*, 141 Wn. App. at 244.

Aubrey fails to meet her burden on appeal as to this challenge. First, with regard to the total amount awarded to each party, Aubrey was awarded more than half of the value of the known retirement accounts. Although Aubrey argues that she should be awarded a portion of the PERS 2 account, the court listed the value of that account as unknown. Dividing an account with an unknown balance risks an arbitrary distribution of assets and conflicts with the notion of substantial evidence. Most critically, testimony at trial indicates that the PERS 2 account is akin to a social security account, something the court is not permitted to value and distribute. Aubrey has not demonstrated that awarding the PERS 2 account to David in full was an abuse of the trial court's broad discretion.

III.    Spousal Support

Finally, Aubrey asserts that the court failed to consider all relevant factors when it calculated the award of spousal support. At trial, Aubrey requested spousal support in the amount of $5,500 per month. She submitted a financial declaration and testified regarding the contents of her declaration. At the conclusion of trial, the court awarded Aubrey spousal support in the amount of

$3,500 per month from June 1, 2023 to May 30, 2024, to be reduced to $2,500 per month from June 1, 2024 through December 31, 2024, and $1,500 per month from January 1, 2025 until January 31, 2026.

This court reviews a trial court's maintenance award for an abuse of discretion. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 563, 446 P.3d 635 (2019). Maintenance orders are governed by RCW 26.09.090. According to the statute, the trial court is required to consider certain factors to determine a maintenance award, such as:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to [them], and [their] ability to meet [their] needs independently . . . ;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to [their] skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet [their] needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1).

The court, while required to consider each factor in the statute, is not obligated to make any specific factual findings on all of those factors. *In re Marriage of Mansour,* 126 Wn. App. 1, 16, 106 P.3d 768 (2004). Maintenance awards that are not based on a fair consideration of the statutory factors constitute

an abuse of discretion. *In re Marriage of Crosetto*, 82 Wn. App. 545, 558, 918 P.2d 954 (1996).

Aubrey asserts that *In re Marriage of Morrow* supports her position. 53 Wn. App. 579, 770 P.2d 197 (1989). In that case, this court affirmed an award of lifetime maintenance of $2,200 per month to the wife, who was college-educated, employed, and had an irreversible medical condition that rendered her legally blind on occasion. *Id.* at 580-81, 591. Her illness "require[d] her to rely on others for transportation and limit[ed] her ability to function independently at work." *Id.* There are material facts that distinguish this case from that of the Morrows. For example, throughout the course of the Morrows' marriage, the wife received $1,700 monthly from the husband. *Id.* at 581. She also submitted affidavits listing her monthly expenses that the trial court found credible after she testified to them at trial. *Id.* at 583-84.

In the instant case, Aubrey testified she received "gambling money or allowance money every month, usually $400," an amount considerably lower than the Morrows' $1,700 spousal allowance in the 1980s. Like the spouse who was awarded maintenance in *Morrow*, Aubrey has some educational credentials. However, unlike *Morrow*, there is no evidence that Aubrey has used her real estate education to obtain work. Most critically, unlike *Morrow*, the court in this case found Aubrey's testimony about her expenses to be unreliable. It expressly noted, "Ms. Pauley, the [c]ourt does not find your testimony credible. Period. . . . [I]t is not credible testimony in this day and age. The numbers you provided me for household expenses are not credible." Aubrey does not engage with this credibility

determination in her briefing or offer any authority that would permit this court to disregard this critical finding. Although there are not findings of fact pertaining to each of the statutory factors, each factor was addressed through the testimony elicited throughout the three-day trial. Therefore, Aubrey has not established an abuse of discretion by the trial court as to the award of spousal maintenance.

Affirmed.[3]

_Hazelrigg, ACJ_

WE CONCUR:

_Smith, C.J._ _Mann, J._

---

[3] David submitted a one-page response to Aubrey's opening brief, asking this court to "dismiss this filing" based in part on a claim that the appeal was not filed within the time established by the Rules of Appellate Procedure. RAP 5.2(e) establishes the relevant timeframe to appeal as within 30 days of the entry of the order on a motion for reconsideration. Aubrey filed her notice of appeal on July 18, 2023 and designated therein both the May 26, 2023 dissolution decree and the June 23, 2023 denial of her motion for reconsideration.

David also asserts the appeal was not "properly filed with the court," but fails to elaborate as to any specific procedural defects. Finally, he asserts the opening brief "includes many perjured statements." Because the appeal was timely filed and David has failed to provide argument as to his alternate bases for dismissal, the motion to dismiss is denied.