IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of<br>JULIA FREDERICKS,<br><br>　　　　　　　Respondent,<br><br>　　　and<br><br>JESSE FREDERICKS,<br><br>　　　　　　　Appellant. | No. 86674-5-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Julia and Jesse Fredericks separated in 2023. Julia[1]

petitioned for dissolution and personally served Jesse with a summons and her

petition. Jesse did not respond to the petition and Julia moved for default. The

court entered an order of default, which Jesse moved to vacate. The court

denied his motion and entered final dissolution orders. Jesse appeals, arguing

that the court erred in denying his motion to vacate, that the final orders

impermissibly exceed the scope of Julia's petition, and that the orders are not fair

and equitable. Julia asks for attorney fees on appeal. We affirm the trial court's

orders and deny Julia's request for fees.

FACTS

Julia and Jesse married in 2010. They have one minor child in common.

The couple separated on July 12, 2023. On October 27, 2023, Julia petitioned for

dissolution in King County Superior Court. In her petition, Julia asked the court to

---

[1] For clarity, we refer to Julia and Jesse Fredericks by their first names. We mean
no disrespect.

divide the parties real and personal property fairly and equitably and to issue a parenting plan. Julia also petitioned for a permanent domestic violence protection order (DVPO). On the same day, the court issued a temporary protection order.

On October 30, 2023, Julia served Jesse with notice of the dissolution petition. Process server Andrew Pack declared under the penalty of perjury that he served Jesse with several documents, including the temporary protection order and hearing notice, petition for the permanent DVPO, petition for dissolution, "Summons: Notice about a Marriage or Domestic Partnership," and case scheduling order setting deadlines. Pack explained that he personally served Jesse with the documents at Jesse's residence.

Jesse did not timely respond to the petition for dissolution.[2] So, on November 22, 2023, Julia moved for a default order, allowing the court "to approve final orders in this case without the other party's participation." The court entered an order of default that same day.

On February 6, 2024, Julia served Jesse with proposed final orders, including a parenting plan, child support order, child support worksheets, dissolution order, and findings of fact and conclusions of law about a marriage. She also included exhibits H and W, which outlined her proposed division of assets and liabilities. Jesse responded to Julia's petition the next day.

Jesse hired an attorney, and on February 27, 2024, he moved to vacate the default order under CR 60(b)(1), (4), and (11). Jesse argued that his failure to timely respond to Julia's petition was excusable because he was unaware that

---

[2] Jesse did appear to oppose Julia's petition for a DVPO. That order is not the subject of this appeal.

the law required him to respond within 20 days. According to Jesse, Julia served him with the dissolution petition on October 30, 2023, but she did not serve him "timely (or ever)" with the summons. In his declaration in support of the motion to vacate, Jesse claimed that "[t]here was no Summons in the service packet." And he said that

> [t]he case schedule did not contain a single reference to the summons and proposed parenting plan, but my assumption was that the summons must have been what I had signed and returned to the individual that executed the service.

Julia opposed the motion to set aside the default order. In support, she filed a declaration from Pack, who testified:

> On October 30, 2023, I reviewed and personally served Jesse Fredericks with the documents listed in the declaration of service attached to this declaration. I vividly remember this specific service because I ran into [Julia] at the house first, who wanted to be sure she was gone before I served him because she was concerned that he was likely to react violently.

In reply, Jesse filed another declaration. He stated:

> I do not know what happened or where the summons is. All I know is that I did not ever see it. I know my wife has submitted the declaration from the server and he attested the summons was in the service packet but I did not ever see it until I went down to the courthouse and saw it on the county e-portal on the day I received the proposed final orders. I still have the original service packet with me and I have gone through it multiple times and it is not here. I don't know what else to say about it other than if I would have seen it or been aware of it I obviously would have invested the requisite 15 minutes to fill it out and submit it given the potential ramifications and that practically my entire life is at stake.

On March 21, 2024, the court heard Jesse's motion to vacate. And on March 22, the court issued an order denying the motion. It explained:

> [Jesse's] claim that he was not served with a Summons is not supported by the evidence. The Proof of Service document indicated a Summons was served on [Jesse], and the Declaration of

the process server, Andrew Pack, confirmed that a Summons was served along with all the other required and necessary pleadings. In contrast, [Jesse] filed declarations containing conflicting and equivocal statements about whether he was served with the Summons. Therefore neither CR 60(b)(1) nor CR 60(b)(4) apply.

The Court further will not apply CR 60(b)(11) as there is no other basis or reason justifying relief from the operation of the judgment.

Jesse moved for reconsideration. He attached another declaration, saying:

I intended for the declaration and my statements contain[ed] therein to clearly convey the fact that I never received the summons. If for any reason I failed in this regard, I apologize as that was certainly not my intent. I would like to take this opportunity to avoid any and all possible confusion by categorically and unequivocally stating for the record, that to the very best of my knowledge, I did not receive the summons as part of the service packet I received on October 30, 2023. Further, I had absolutely no knowledge of the existence of a response requirement until after I received the proposed final orders from the opposing counsel on February 5th 2024. I acknowledge that it was a mistake to assume the list of important dates and deadlines found on the case schedule was a holistic representation of all important dates and deadlines.

On April 5, 2024, the court denied Jesse's motion for reconsideration. Then, on April 8, it issued a final dissolution decree and findings and conclusions about a marriage and divided the parties' assets and liabilities as proposed in Julia's exhibits H and W. The court also issued a final parenting plan based on Julia's proposed parenting plan.

Jesse appeals.

## ANALYSIS

Jesse argues that the court erred by denying his motion to vacate the default order, that the final orders are void because they exceed the relief requested in Julia's petition, and that the final orders are not fair and equitable. Julia asks for attorney fees on appeal. We address each argument in turn.

4

1. <u>Motion to Vacate</u>

We review a trial court's decision on a motion to vacate a default order for abuse of discretion. *In re Est. of Stevens*, 94 Wn. App. 20, 29, 971 P.2d 58 (1999). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We do not weigh contested evidence or make factual determinations on appeal. *See State v. Walker*, 153 Wn. App. 701, 708, 224 P.3d 814 (2009).

We disfavor default orders and prefer to resolve cases on their merits. *Sellers v. Longview Orthopedic Assocs., PLLC*, 11 Wn. App. 2d 515, 520, 455 P.3d 166 (2019). Our primary concern is " 'whether justice is being done,' " and we determine what is just and equitable " 'based on the specific facts of each case.' " *Id.* (quoting *VanderStoep v. Guthrie*, 200 Wn. App. 507, 517-18, 402 P.3d 883 (2017)). In that regard, under CR 55(c)(1), we may set aside an order of default "[f]or good cause shown."[3] And a showing of excusable neglect followed by due diligence establishes good cause. *Stevens*, 94 Wn. App. at 30.

Here, Jesse claims that his failure to respond to Julia's petition was excusable because he did not receive the summons explaining that he had to respond within 20 days. But the court rejected Jesse's testimony. Instead, the court was persuaded by the proof of service and Pack's subsequent declaration attesting that Jesse received the summons. Jesse complains that the trial court

---

[3] Jesse moved to vacate under CR 60(b). But CR 60(b) applies to only default judgments and final orders. *See also* CR 55(c)(1). And here, Jesse moved to vacate a default order, so CR 55(c)(1) governed his motion. Still, because Jesse argues excusable neglect, the analysis is the same.

"was entirely mistaken" by questioning his credibility. But again, we do not reweigh evidence on appeal. *Walker*, 153 Wn. App. at 708.

Because Jesse failed to show good cause for his failure to respond to Julia's petition, the court did not abuse its discretion by denying his motion to vacate the default order.

2. <u>Final Orders</u>

Jesse argues that the final order distributing assets and liabilities and the final parenting plan are void because they exceed the relief sought in Julia's petition for dissolution. But Jesse did not move to vacate the final orders below, so he cannot make that argument for the first time on appeal.

In entering a default judgment, a court may not grant relief in excess of or substantially different from that described in the complaint. *In re Marriage of Leslie*, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989). And, under CR 60(b)(5), a trial court may vacate a default decree as void to the extent that the final orders are "different in kind from or exceed in amount that prayed for" in the petition. CR 54(c); *In re Marriage of Johnson*, 107 Wn. App. 500, 503-04, 27 P.3d 654 (2001). But under RAP 2.5(a), we may refuse to review any claim of error raised for the first time on appeal.

Jesse did not move the court below to vacate the final orders he now appeals. And he makes no argument as to why we should consider the issue for the first time on appeal. As a result, we decline to address the issue.

3. <u>Fair and Equitable Disposition</u>

Jesse argues that the trial court's final orders are not fair and equitable.

He contends that the court abused its discretion in its valuation of real property and imposing parenting limitations under RCW 26.09.191.[4] We disagree.

A. Real Property Valuation

Jesse argues that the trial court erred by using tax assessments for Julia and Jesse's real property, causing the court to undervalue their assets. We review property divisions made during the dissolution of marriage for a manifest abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.2d 779 (2005).

RCW 26.09.080 provides, in relevant part, that

> [i]n a proceeding for dissolution of the marriage . . . , the court shall . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors.

Relevant factors include, but are not limited to, the "nature and extent of the community property," the "nature and extent of the separate property," the "duration of the marriage," and the "economic circumstances of each spouse . . . at the time the division of property is to become effective." RCW 26.09.080(2)-(4).

"In valuing assets in a dissolution proceeding," a trial court "has wide discretion to consider all relevant facts and circumstances." *In re Marriage of*

---

[4] Julia argues that like Jesse's challenge to the scope of the final orders, he waived any challenge to the merits of the final orders because he did not move below to set them aside. But Jesse argues that the court made errors of law and that sufficient evidence does not support the orders. And the proper means for challenging errors of law and sufficiency of the evidence is an immediate appeal of the judgment. *Burlingame v. Consol. Mines & Smelting Co.*, 106 Wn.2d 328, 335-36, 722 P.2d 67 (1986); *In re Marriage of Tang*, 57 Wn. App. 648, 654-56, 789 P.2d 118 (1990). So, we address his arguments.

*Hay*, 80 Wn. App. 202, 204, 907 P.2d 334 (1995). We will not disturb the court's property valuation on appeal if it "ha[s] reasonable support in the trial record." *In re Marriage of Pilant*, 42 Wn. App. 173, 178, 709 P.2d 1241 (1985). A trial court does not abuse its discretion when it values property based on only the evidence before it. *See In re Marriage of Hadley*, 88 Wn.2d 649, 658-59, 565 P.2d 790 (1977).

Jesse argues that the trial court erred by valuing their marital home and Julia's dental office using tax assessments. Citing *McClure v. Delguzzi*, 53 Wn. App. 404, 767 P.2d 146 (1989), and the unpublished opinion, *In re Marriage of Smith*, noted at 170 Wn. App. 1011, 2012 WL 3568528, he claims such valuations are "impermissible under Washington law." But *McClure* is a foreclosure case and does not address dissolution proceedings. 53 Wn. App. at 405. And the court in *Smith* does not discuss using tax assessments as a way to value real property. *See Smith*, 2012 WL 3568528, at *1-*2.[5] Ultimately, Jesse cites no authority prohibiting the use of tax assessments to value property in dissolution proceedings, so we presume he found none. *See State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (when a party fails to cite supporting authority, we may assume he diligently searched and found none).

The court did not abuse its discretion by valuing real property based on tax assessments—the only evidence presented to the court.

---

[5] We also note that unpublished opinions "have no precedential value and are not binding on [this] court." GR 14.1(a).

B. Parenting Plan

Jesse argues the court erred by entering a parenting plan that imposed restrictions under RCW 25.09.191 "without specific findings of harm." We disagree.

We review the provision of a parenting plan for an abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). Under former RCW 26.09.191(2)(a) (2021), a parent's residential time "shall be limited" if the court finds that the parent has engaged in any of the following conduct:

> (ii) physical, sexual, or a pattern of emotional abuse of a child; [or]
> (iii) a history of acts of domestic violence as defined in RCW
> 7.105.010 or an assault or sexual assault that causes grievous
> bodily harm or the fear of such harm or that results in a pregnancy.

A trial court must make express findings under RCW 26.09.191 in order to impose restrictions in a parenting plan. *In re Marriage of Katare*, 125 Wn. App. 813, 826, 105 P.3d 44 (2004).

Here, the trial court made express findings that support its order. It found that Jesse has "abused or threatened to abuse a child," both through "physical" and "repeated emotional abuse." It also found that Jesse has a history of domestic violence under RCW 7.105.010 and that he or someone in his home "has assaulted or sexually assaulted someone causing grievous physical harm, causing fear of such harm, or resulting in a pregnancy." Finally, the court found that Jesse's "long-term emotional or physical problem" and "long-term" substance abuse "get[ ] in the way of his ability to parent." These findings support the court's limitations on Jesse's residential time and decision making under RCW 26.09.191.

The court did not abuse its discretion in entering the provisions of the parenting plan.

4. Attorney Fees

Julia requests attorney fees under RCW 26.09.140 and RAP 18.1. We may award attorney fees in a dissolution proceeding after considering the financial resources of both parties. RCW 26.09.140; RAP 18.1(a).

A party relying on RCW 26.09.140 "must make a showing of need and of the other's ability to pay fees in order to prevail." *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 808, 929 P.2d 1204 (1997). And the party relying on a financial need theory for recovery of attorney fees must submit an affidavit of need "no later than 10 days prior to the date the case is set for oral argument." RAP 18.1(c). Julia has not filed a timely affidavit of need, so she is not entitled to fees.

We affirm the default order and final dissolutions orders and deny Julia's request for fees on appeal. .

_____, ACJ

WE CONCUR:

_____        _____
Chung, J.                       Mann, J.

10