IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JOHN R. SIEGEL<br><br>                    Appellant,<br><br>     and<br><br>DAWN M. SIEGEL,<br><br>                Respondent. | No. 88018-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — John Siegel challenges the trial court's division of property in the dissolution of his marriage to Dawn Siegel. Because he fails to demonstrate that the trial court abused its discretion in its valuation and distribution of the parties' assets or when it denied his motion for reconsideration, we affirm the dissolution order.

FACTS

John and Dawn[1] were married on November 14, 2009 and separated on August 1, 2022. John petitioned for dissolution on July 18, 2023. Prior to trial, the parties entered a CR 2A agreement regarding parenting issues and child support, which left only a few matters to be resolved by the court, including the issue of property distribution.

---

[1] Because the parties share the same last name, we refer to them by their respective first names for clarity. No disrespect is intended.

The trial in this matter was conducted on October 8 and 9, 2024. Both parties testified, as did real estate appraiser Mark Hall. John requested that the property be divided equally between the parties, whereas Dawn requested a 60-40 distribution in her favor. The trial court rejected both positions and awarded a 55-45 division in Dawn's favor. Only a limited number of assets are in dispute in this appeal. The facts concerning each of these assets are outlined below.

Stock Options

The parties agree that John owned stock options in a company known as Ziply Fiber. John presented no testimony about the stock options in his case in chief, and the only mention of the stock options in his trial brief was contained in the proposed distribution spreadsheet, where he asked the court to divide the proceeds equally once the shares were liquidated.

At trial, Dawn testified that John had valued the Ziply stock options at five dollars per share in his responses to her interrogatories. She also testified that she wanted the shares to be awarded to John at that value because she did not want to have further prolonged financial contact with him and it was unknown at the time when the stock options would be liquidated. John did not object to any of this testimony, nor did he cross-examine Dawn with respect to this asset. On rebuttal, John testified that the stock options would monetize at the same time as the private equity investment administered by WaveDivision Capital and there was "absolutely no estimate of date or value."

The trial court accepted Dawn's proposal; it valued the Ziply stock options at five dollars per share and awarded that value entirely to John. The court did not enter any additional findings with respect to this asset.

In his motion for reconsideration, John argued that the trial court's valuation of this asset at five dollars per share was not supported by the evidence. John also claimed that after the court entered the dissolution order, Ziply was sold to a company in Canada, and he expected to receive one dollar and sixty cents per share for his stock options. John did not submit an affidavit or declaration in support of this claim. The trial court reviewed the motion for reconsideration and determined the following:

> As stated in the [c]ourt's Additional Findings of Facts, the [c]ourt did not [find] the [p]etitioner, Mr. Siegel, credible or persuasive during trial. Hence, why the [c]ourt did not adopt most of his suggestions for the value of various items. As mentioned in the [c]ourt's ruling, he failed to provide reliable and credible testimony, e.g. experts, in support [of] his assertions. The same holds true for the assertions in his Motion for Reconsideration. . . .
> Similarly, Mr. Siegel's current Motion fails to provide factually persuasive information to support how this information meets the legal test for reconsideration of the [c]ourt's prior decision.

Accordingly, the trial court denied reconsideration as to this asset.

Home Furnishings

John testified at trial that he estimated the value of the furniture and personal property items in the marital home to be worth $50,000. John explained that he based this estimate on the fact that the parties "were spending quite a bit of money to refurnish the house" after the home was remodeled in 2019. Dawn, on the other hand, testified that she estimated the value of the furniture to be worth

$1,600. The trial court did not find either party's testimony credible on this issue. Given the lack of credible evidence, the court assigned no value to the furnishings and awarded them to Dawn.

Hockey Season Tickets

During the marriage, John signed a seven-year agreement with Seattle Hockey Partners LLC for season tickets to the Seattle Kraken hockey games. Under the terms of the agreement, season tickets cost $54,560 for the first year with a three percent escalation annually until the termination date. John testified that for the three seasons prior to trial, he attempted to resell the tickets, but demand was low and the resale value was only "about 50 percent of the actual price to purchase them." He requested that the court consider the tickets to be a debt of $153,654.

The trial court rejected John's characterization of the tickets as a debt. The court expressly found that "in the absence [of] additional credible testimony the [c]ourt does not find sale of the tickets has produced an absolute and unavoidable loss." The court therefore classified them as an asset and awarded them to John.

John moved for reconsideration with respect to this item and argued that the trial court abused its discretion by classifying the tickets as an asset instead of a debt and ignored evidence of the ongoing financial obligation on the contract. The trial court agreed in part and noted that it had failed to take the contract obligation into account. However, the court found that the tickets had intrinsic value equal to their face value and were not merely a debt. Accordingly, the trial court assigned a value of zero dollars to the tickets and contract.

Private Equity Investments

On rebuttal during the trial, John testified that he held a private equity investment in a fund administered by WaveDivision Capital. He asserted that this investment was not liquid, could not be divided, and could only be held by an investor accredited with the Securities and Exchange Commission (SEC).

The trial court valued the WaveDivision investment at $275,501 and divided the value between the parties, awarding $110,200 to John and $165,301 to Dawn. The court did not enter any additional findings with respect to this asset. In his motion for reconsideration, John reiterated his argument that the WaveDivision investment could be held only by someone accredited by the SEC and, as Dawn was not accredited, no portion of it could be awarded to her. The only additional evidence John presented in support of this argument was an unauthenticated document from the SEC explaining generally how to become an accredited investor. The trial court denied reconsideration and found that John lacked credible evidence to support his argument on this issue.

John timely appealed.

## ANALYSIS

I.     Standard of Review

In a dissolution action, the trial court is required by statute to divide the property and liabilities of divorcing parties "as shall appear just and equitable after considering all relevant factors" but "without regard for misconduct." RCW 26.09.080. A property division entered in a dissolution action will be reversed only

if there is a manifest abuse of discretion. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). Similarly, "[m]otions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

The court abuses its discretion when the decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). A decision is based on untenable grounds or reasons if it is based on unsupported facts or an incorrect legal standard. *Id.*

II.     Valuation and Distribution of Certain Assets

John asserts that the trial court erred when it overvalued certain marital assets and incorrectly distributed property between the parties. We consider each of his specific challenges in turn.

A.     Stock Options

John first contends that the trial court erred when it valued his stock options in Ziply at five dollars per share. Specifically, he argues that the five-dollar value was not supported by any evidence and the trial court's decision to impose a present valuation rather than awarding a percentage to be divided upon sale of the company was manifestly unreasonable. We disagree.

In dissolution proceedings, trial courts have generally employed three different approaches to valuing stock options: present value, retained jurisdiction, and deferred distribution. *In re Marriage of Farmer*, 172 Wn.2d 616, 627, 259 P.3d 256 (2011). Under the present-value method, the trial court determines the current value of the stock options and awards the non-holder spouse a lump-sum cash award at the time of dissolution. *Id.* at 628. Under the retained-jurisdiction approach, the trial court retains jurisdiction of property dissolution until the holder cashes in the stock options. *Id.* And under the deferred-distribution approach, the trial court awards a percentage of the stock options, which will be distributed only when the holder cashes in the stock options. *Id.* Our Supreme Court has declined to mandate a specific approach to dividing stock options in any given scenario. *See id.* at 627.

John avers that if a trial court chooses to employ a present-value approach, its findings must include an explanation of the methodology it used to calculate the value of the stock options. However, John did not make this argument at trial, nor did he present it in his motion for reconsideration. Absent satisfaction of certain specific requirements, we do not consider matters presented for the first time on appeal. *See* RAP 2.5(a). Because John fails to present any argument as to why RAP 2.5(a) is satisfied such that we could reach this issue, we decline to do so.

John also argues that there is no evidence to support the trial court's valuation because Dawn produced none to support her testimony that the stock options were worth five dollars per share. A trial court does not abuse its discretion where its valuation of property is within the scope of the admitted evidence. *See*

*In re Marriage of Mathews,* 70 Wn. App. 116, 122, 853 P.2d 462 (1993), *abrogated on other grounds by In re Marriage of Wilcox*, 3 Wn.3d 507, 553 P.3d 614 (2024).

John likens this case to *In re Marriage of Hall*, 103 Wn.2d 236, 692 P.2d 175 (1984). In that case, the husband's experts testified that he held no goodwill in his practice as a physician, whereas the wife testified that the husband held goodwill at a minimum of $100,000. *Hall,* 103 Wn.2d at 246. The court did not adopt either of these figures and instead valued the husband's goodwill in his practice at $70,000. *Id.* As the trial court did not explain how it reached that figure, the Supreme Court held that at the very least, additional factual findings were required for the valuation to stand. *Id.* at 247.

Here, however, the trial court's valuation of the stock options is consistent with the evidence in the record. At trial, Dawn testified that John had valued his Ziply stock options at five dollars per share in his answers to interrogatories.[2] John did not object to Dawn's testimony, cross-examine Dawn on this issue, or offer any competing testimony.[3] As Dawn's testimony was the only admitted evidence concerning the value of the Ziply stock options, the trial court did not abuse its discretion when it adopted that value.

Next, John argues that the trial court abused its discretion when it utilized a present-value approach for the Ziply stock options, rather than the retained-jurisdiction or deferred-distribution approach. Specifically, John contends that the

---

[2] In a dissolution proceeding, the owner of property can testify to its value. *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968).

[3] To the extent John argues that Dawn's testimony was not credible, we are unable to review this claim of error. *See In re Marriage of Burrill,* 113 Wn. App. 863, 868, 56 P.3d 993 (2002) (trial court's credibility determinations are not subject to review). To the extent John argues that Dawn was required to produce expert testimony or documentary evidence in addition to her own testimony, he cites no authority articulating such a requirement.

trial court's decision to use the present value of the stock options *could* result in a patent disparity in the respective assets of the parties and therefore was untenable. But this court will not reverse an award of marital property based on hypotheticals. As we have previously recognized, "[i]t is a simple matter to conjure up hypothetical situations which may or may not develop, any one of which would result in a gross injustice to either party when [the present-value] method of distributing" is applied to an asset of fluctuating value, such as stock options. *DeRevere v. DeRevere*, 5 Wn. App. 741, 746-47, 491 P.2d 249 (1971).

Here, Dawn objected to the retained-jurisdiction and deferred-distribution approaches, as she wished to have no further financial ties to John. John did not argue that a present-value approach would result in a disparate division of assets, nor did he produce any evidence that a disparate division was likely to result. The trial court did not abuse its discretion when it chose to use a present-value approach to value the Ziply stock options and award them to John.

John further argues that the trial court should have granted his motion for reconsideration in light of new evidence that a company in Canada purchased Ziply and, as a result of that sale, he expected to receive one dollar and sixty cents per share for his Ziply stock options. In support of his motion for reconsideration, John submitted a document concerning Bell Canada's agreement to acquire Ziply. Not only was this document improperly submitted, as it was not attached to an affidavit or declaration, *see* KING COUNTY LOCAL CIVIL RULE 7(b)(5)(B)(iv) ("[D]ocumentary evidence relied upon must be quoted verbatim or a photocopy of relevant pages must be attached to a declaration identifying the documents."); *State v. Hobbs*, 13

Wn. App. 866, 869, 538 P.2d 838 (1975) ("An affidavit of newly discovered evidence made by counsel is not sufficient."), the one dollar and sixty cent figure does not appear anywhere in it.

As John presented no evidence to support his assertion that the Ziply stock options were scheduled to sell for one dollar and sixty cents per share, the trial court did not abuse its discretion when it denied John's motion for reconsideration.

B.      Home Furnishings

John next contends that the trial court erred when it assessed the value of the home furnishings at zero dollars.  Dawn responds that there was no error but, even if there was, the de minimus value of the furnishings does not warrant reversal.  We agree with Dawn.

The ultimate obligation of the trial court in dividing property between spouses is to "arrive at a fair, just and equitable distribution of assets and liabilities regardless of their characterization as separate or community."  *In re Marriage of Brady*, 50 Wn. App. 728, 731, 750 P.2d 654 (1988).  In accordance with this aim, "mischaracterization of property is not necessarily a reversible error, if the distribution is, on the whole, fair and equitable."  *In re Marriage of Pilant*, 42 Wn. App. 173, 181, 709 P.2d 1241 (1985).

Here, John testified that he believed the home furnishings to be worth approximately $50,000, whereas Dawn testified to her belief that the home furnishings were worth only $1,600.  As Dawn correctly points out, even under John's valuation, the home furnishings would represent only one percent of the total value of the marital estate.  John does not argue that the allegedly errant

valuation of the home furnishings *by itself* renders the property division unjust and inequitable, only that it is unjust and inequitable when combined with the alleged error concerning the Ziply stock options and season tickets. As we have decided that the trial court did not err in the division of the stock options, we agree that if any error exists regarding the valuation of the home furnishings, such error would be de minimus. Accordingly, even if we were to assume error on this matter, without so deciding, it would not warrant reversal. In light of the particular posture of this assignment of error, John has failed to demonstrate entitlement to the requested relief on this issue.

C.     Hockey Season Tickets

John also asserts that the trial court erred when it assigned a value of zero dollars to the Kraken season tickets instead of assessing them solely as a debt. Specifically, John argues that the trial court should have accepted his "unrebutted testimony about [his] inability to personally use the tickets and his difficulty recouping the costs" and assessed no positive value to the tickets.

"We will not disturb a property valuation having reasonable support in the trial record." *Pilant*, 42 Wn. App. at 178. Here, the trial court admitted as an exhibit the contract John entered in order to purchase the Kraken tickets. While John testified that he believed the tickets had no value and he was unable to resell them, the trial court "did not [find] the [p]etitioner, Mr. Siegel, credible or persuasive during trial." The trial court's credibility determination is not reviewable by this court. *Burrill,* 113 Wn. App. at 868. As such, John fails to demonstrate any error in the trial court's valuation of the Kraken tickets.

D.     WaveDivision Investment

Finally, John argues that the trial court erred when it awarded Dawn a portion of the WaveDivision investment because that particular asset can be held only by an individual accredited by the SEC.  As noted in Section II.C., *supra*, the trial court expressly found John's testimony not credible and that his submissions on reconsideration did not support his position.  With no credible evidence demonstrating that the WaveDivision investment must be held by an accredited individual, the trial court did not abuse its discretion when it awarded a portion of this asset to Dawn or when it denied John's motion for reconsideration.

III.     Attorney Fees on Appeal

Dawn requests an award of attorney fees on appeal pursuant to RAP 18.1(a) and RCW 26.09.140.  Under RCW 26.09.140, this court may, after considering the financial resources of the parties, "order a party to pay for the cost to the other party of maintaining the appeal."  *See also In re Marriage of Kaufman*, 17 Wn. App. 2d 497, 521, 485 P.3d 991 (2021).  The trial court declined to award fees to Dawn and ordered that both parties be responsible for their own attorney fees.  We similarly decline to award fees on appeal.

Affirmed.

WE CONCUR:

- 12 -